UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

    AK MEETING IP, LLC,

                           Plaintiff,

             -against-

    EPIC GAMES, INC.,

                        Defendant.

------------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/26/2024

1:23-cv-8214-GHW

<u>MEMORANDUM OPINION
& ORDER</u>

GREGORY H. WOODS, District Judge:

      Defendant Epic Games, Inc. ("Defendant") is the developer of Fortnite, an online video game. Plaintiff AK Meeting IP, LLC ("Plaintiff") alleges that Defendant's video games infringe on Plaintiff-owned U.S. Patent No. 8,627,211 (the "'211 Patent"). Defendant has moved to dismiss for failure to state a claim. Dkt. No. 27. Magistrate Judge Jennifer E. Willis issued a Report and Recommendation recommending that Defendant's motion to dismiss be granted. Dkt. No. 45 (the "R&R"). Plaintiff objects. Dkt. No. 46 (the "Objections"); Dkt. No. 47 (the "Response").

      The Court agrees with the R&R that Plaintiff has failed to state a claim. Plaintiff's allegations are either conclusory or merely track the language in the '211 Patent. Because the Amended Complaint is devoid of well-pleaded allegations supporting Plaintiff's infringement claims, Plaintiff's claims must be dismissed.

## I.      BACKGROUND

      The Court refers the reader to the R&R issued by Judge Willis on August 21, 2024.[1] The R&R contains a comprehensive description of the procedural history in this case and the arguments

---

[1] Terms used without definition in this opinion have the meaning set forth in the R&R.

and factual record presented by the parties in connection with Defendant's motion to dismiss.  The Court assumes the reader's familiarity with the R&R.

### A.    The '211 Patent

Plaintiff owns the '211 Patent.  Dkt. No. 23 ¶ 6 ("FAC"); Dkt. No. 23-1 ('211 Patent).[2]  The '211 Patent is entitled "Method, Apparatus, System, Medium, and Signals for Supporting Pointer Display in a Multiple-Party Communication."  '211 Patent at 2.  It contains 150 claims, but both parties agree that only Claim 1 is relevant here.  FAC ¶ 9; Objections at 6; Response at 2.  In full, Claim 1 claims:

> A method for supporting multiple-party communications in a computer network including a server and at least one client computer, the method comprising:
> > receiving a first cursor message at the server from the client computer, said first cursor message representing a change in a position of a first cursor associated with the client computer in response to user input received from a user of the client computer;
> > producing a first pointer message in response to said first cursor message, said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client computer; and
> > transmitting said first pointer message to said client computer.

'211 Patent at 76.  Both parties agree that at least two claim elements are found within Claim 1:  (1) a "cursor associated with the client computer"; and (2) a "pointer" whose "display" represents a "change in [] position of said first cursor."  *Id.*; *see* Objections at 1–2, 11 (reciting elements of Claim 1);[3] Response at 9.

---

[2] The FAC requests a "judgment that Defendant has infringed the claims of the '124 and '211 patents."  FAC at 5.  The "'124 Patent" is not otherwise mentioned in the FAC or in Plaintiff's briefing.

[3] Despite repeatedly acknowledging that these elements are found in Claim 1, *see e.g.*, Objections at 1–2 (reciting elements, including a "*cursor* associated with the *client computer*" and a "*pointer message* . . . representing the change in position of the *first cursor* . . . being operable to display a *pointer* on the *client computer*" (emphases in original)); *id.* at 11–12 (reciting elements and noting that they are "required at the pleading stage"); *see also* FAC Ex. B (table going through these elements), Plaintiff's Objections also argue, for the first time, that Claim 1 should not be read as requiring these claim elements.  Objections at 5.  In support of this argument, the Objections state only that "[i]t is the elements of Claim 1 which must be plausibly alleged, not the presence of the . . . alleged requirements [listed]."  *Id.* at 6.  This argument is waived because Plaintiff did not raise it before Judge Willis.  *See* Dkt. No. 37 at 6–7 (opposition brief before Judge Willis) (reciting these elements and not contesting Defendant's recitation of these elements, Dkt No. 27 at 5); *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may

The '211 Patent specification describes the "cursor" as "the client computer cursor" on the client computer's display, which moves based on "user input signals for moving a cursor" from the client computer's "pointing device." '211 Patent at 51.[4]  It describes the "pointer" as "a secondary pointer, which is also displayed on the . . . client computer[]." *Id.*  As the patent specification explains, "[a] feature of the system is that while user input, such as movements of the pointing device at the client computer . . . are reflected almost immediately on the display as a corresponding change in position of the cursor, the client computer also transmits a cursor message to the server to elicit a pointer message from the server." *Id.*  Thus, "while the cursor responds to [a client computer's] pointing device movements in near real-time, the pointer only moves once the message representing the movement is received back from the server." *Id.* at 60.  "Accordingly, when the pointing device is moved, the pointer generally trails the cursor, providing a useful view of a network latency associated with a round trip from . . . the server [] and back again to the client computer." *Id.*

An illustrative embodiment of the patent, as provided in the patent specification, is reproduced below.  The embodiment is a "screenshot of a user interface displayed on the client computer[]." *Id.* at 50.  The "496" label corresponds to the "cursor" and the "499" label corresponds to the "pointer." *Id.* at 56.

---

not be deemed objections at all."); In any event, Plaintiff's argument is conclusory and offers no basis to depart from the plain language in Claim 1, which has governed throughout this case.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (recognizing that district courts should only construe claim limitations where "the parties present a fundamental dispute regarding the scope of a claim").

[4] According to the patent specification, examples of a client computer's pointing device include "a computer mouse" or a "stylus for providing user input on a touch sensitive display." '211 Patent at 51.



FIG. 11

## B.    Alleged Infringement

Defendant is the developer of Fortnite, an online video game. *See* R&R at 21.  Construed

liberally,[5] Plaintiff alleges that one or several of Defendant's Fortnite products infringes directly and

indirectly on the '211 Patent.  FAC ¶ 12.

Plaintiff's infringement allegations are set out in a "preliminary table included as Exhibit B"

to the FAC.  *Id.* ¶ 9.  Exhibit B begins with certain basic information about the '211 Patent, then

attaches a series of screenshots with brief annotations.  FAC Ex. B, R&R at 11–21.  The relevant

---

[5] Relying on *Artrip v. Ball Corporation*, an unpublished decision by the Federal Circuit, the R&R recommended dismissal
on the independent ground that Plaintiff failed to "specifically identify" which of Defendant's products allegedly
infringed on the '211 Patent.  R&R at 21 (quoting 735 Fed. App'x 708, 714 (Fed. Cir. 2018)).  The R&R noted that the
FAC points to screenshots of different *Fortnite* websites or games, and concluded that "Defendant has no way to know
which of these games Plaintiff is accusing."  *Id.*  The Court declines to adopt this recommendation, as the FAC identifies
Defendant's *Fortnite* products with more particularity than the plaintiff in *Artrip*.  *See* 735 Fed. App'x at 714.  Unlike here,
the *Artrip* complaint "did not . . . identify the accused machines" "by photograph or name," and instead merely relied on
an allegation of infringement "by use of one or more of the [defendant's] machines."  *Id.*

screenshots are reproduced here.  As to the alleged "cursor" and "pointer," Plaintiff attaches the following:



FAC Ex. B at 7.  Plaintiff thus alleges that the "right-most character" in this screenshot "is a cursor . . . manipulated by one [or] more of a pointing device, such as a mouse, keyboard, or the like," and that the "left-most character" is "the pointer."  Dkt. No. 37 at 7–8 (Plaintiff's opposition brief before Judge Willis) ("Opp.")

As to the pointer "representing said change in said position of said first cursor," Plaintiff attaches the following:



| US8627211 Claim 1 | Epic Games Fortnite |
|---|---|
| **producing a first pointer message in response to said first cursor message**, said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client computer; and | <Fortnite Epic Games Inc. 2017, release date 07/24/2017> |

Epic Games Fortnite describes producing a first pointer message in response to said first cursor message, said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client computer.

- producing a first pointer message in response to said first cursor message = [the message shows up at the pointer (the other avatar)]
- Cursor is the avatar
- Pointer is the other avatar
- Cursor message (message from the avatar) is shown from the client computer (operating the avatar) to the server computer
- Pointer message (message from the other avatar) is shown from the server

- change in said position of said first cursor (avatar) = [if the cursor (avatar) is moved, then the message appears at a different location]
- Cursor is the avatar
- Pointer is the other avatar
- Cursor message (message from the avatar) is shown from the client computer (operating the avatar) to the server computer
- Pointer message (message from the other avatar) is shown from the server computer to the client computer (operating the avatar)

*Id.* at 9, 11.[6]  Plaintiff argued before Judge Willis that the left-most character does not "correspond[]

to a different user," but rather "represent[s] a 'change in said position of said first cursor.'"  Opp. at

---

[6] Plaintiff mistakenly attached a blank screenshot for this claim element, FAC Ex. B at 11, but later clarified that the screenshot reproduced here "is the same image used" where the blank screenshot was included.  Objections at 13.  For ease of reading, the Court appended the annotations Plaintiff included for this element under the correct screenshot. Plaintiff did the same in its Objections.  *Id.* at 14–15.

7.  In other words, Plaintiff argued that the left-most "avatar, i.e., pointer, is clearly shown trailing the first avatar, i.e., the cursor." *Id.* at 7–8.

The R&R noted that the only apparent difference between the FAC's screenshots is that an image of an alien is included in the second screenshot.  R&R at 15.  Plaintiff does not object to this observation.  *See* Objections 11–12.

### C.    The R&R

The R&R recommended dismissal of Plaintiff's claims.  R&R at 23.  It identified "at least three elements" within Claim 1, raised by Defendant and uncontested by Plaintiff, two of which were:  (1) "a 'cursor' from the original client computer," and (2) "a 'pointer' that follows the cursor."[7]  *Id.* at 10; Dkt. No. 28 at 5 (Defendant's brief before Judge Willis, identifying these elements) ("Mem."); Opp. at 7 (addressing these elements without contesting them).

The R&R recommended that the Court find that the "cursor" element was plausibly alleged.  R&R at 15.  The R&R observed that Plaintiff had labeled the right-most avatar in its screenshot as the 'cursor,' and that Plaintiff had reiterated that position in its brief.  *Id.* at 13 (quoting Opp. at 7).  The R&R noted that, while a *Fortnite* avatar could constitute a "cursor" as defined in the '211 Patent, "[a]ny player of the game *Fortnite* would be well aware that the character on the right is not a 'cursor' corresponding to the movements of the player's mouse."  *Id.* at 14.  However, the R&R decided that this conclusion could not be reached without reference to extrinsic evidence regarding *Fortnite*, which the Court could not judicially notice on a motion to dismiss.  *Id.*  The R&R determined that,

---

[7] The third element that the R&R focused on was that "the method must be 'operable' to cause the 'pointer' to display on the original 'client computer.'"  R&R at 10.  The R&R recommended that the FAC did not adequately plead this element, because the FAC "does not describe anything in Defendant's products that could plausibly be a display of the pointer on the client's computer."  *Id.* at 20.  The R&R correctly observed that the FAC does not specifically allege a pointer's display on the client computer beyond "parrot[ing]" the claim language," which in general is insufficient to support a patent-infringement claim.  *Id.* (quoting *QuickLogic Corporation v. Konda Technologies, Inc.*, 618 F.Supp.3d 873, 884 (N.D. Cal. 2022).  However, "drawing all inferences in favor of the plaintiff," *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001), Plaintiff's screenshots are taken from the "client computer," and they purport to "display" a pointer, as well as a cursor.  FAC Ex. B at 5 (alleging that, in the screenshot, the "[p]ointer message . . . is shown from the server computer to the client computer").  The Court therefore declines to adopt this recommendation,

because this conclusion must be ignored, the avatar "on the right could plausibly be a 'cursor' representing 'a change in position of a first cursor associated with the client computer in response to user input.'" *Id.* at 15.

Conversely, the R&R recommended that Plaintiff failed to adequately plead the "pointer" element. *Id.* Plaintiff had argued before Judge Willis that the avatar on the left was the "pointer," and that it was "clearly shown trailing the [right-most] avatar, i.e., the cursor." Opp. at 8. Plaintiff argued that "[t]his change in position represents the latency, or lag, experienced between the client and network computers." *Id.* The R&R found nothing in this argument that "plausibly suggests that the character on the left somehow shadows the character on the right as the claim language requires." R&R at 16; *see also id.* at 15 ("[T]here is nothing in the Amended Complaint to indicate that the alleged 'pointer' follows the 'cursor.'"). The R&R also observed that "the two avatars are clearly different characters facing different directions," *id.* at 16, and that Plaintiff had not provided screenshots indicating the avatar's movement, *id.* at 17. Accordingly, the screenshots not only did not "suggest that the left character follows the right character," but in fact "suggest[ed] the opposite." *Id.* at 16.[8]

Finding these allegations insufficient to support Plaintiff's claim for direct infringement, the R&R correctly concluded that they were insufficient to support Plaintiff's claim for indirect infringement. *Id.* at 22. It is well-established that "a claim of indirect infringement can only arise where there is direct infringement." *Id.* (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1330 (Fed. Cir. 2012)); *accord Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353,

---

[8] The R&R also recommended that Plaintiff's annotation next to the "pointer" avatar "[a]t best . . . indicate[d] two 'cursors,'" because it stated only that the pointer was "a visual indicator on a display which corresponds to the movement of a handheld pointing device." R&R at 16–17. The Court declines to adopt this recommendation, as Claim 1 does provide that the pointer display corresponds to the movement of the client computer's pointing device, albeit in response to the "first cursor message." '211 Patent at 60.

1364 (Fed. Cir. 2016) (noting that "indirect infringement requires knowledge of the underlying direct infringement").

### D.    The Objections

Plaintiff filed Objections to the R&R on September 3, 2024.  The Objections do not dispute the R&R's explanation of the background law governing Plaintiff's infringement claims.  *See* Objections at 1, 5.  The Objections are otherwise categorical.  Plaintiff takes issue with nearly every inference the R&R made against it, citing broadly to the standard of review on a motion to dismiss. *E.g.*, *id.* at 5 (arguing that the R&R "is not reading the complaint in a light most favorable to plaintiff") (citing *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)).  Plaintiff also argues that the R&R improperly engaged in claim construction at the motion to dismiss stage in interpreting the elements of Claim 1.  *See* Objections at 1–2.  Finally, Plaintiff argues that the R&R improperly required that the cursor in the '211 Patent "follow" the pointer, because "the word 'follow' is not in the claim."  *Id.* at 11–12.

Defendant responded to Plaintiff's objections on September 17, 2024.  Defendant did not file separate objections to the R&R.

## II.    LEGAL STANDARD

### A.    Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report.  *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

The Court reviews for clear error those parts of the report and recommendation to which no party has timely objected.  28 U.S.C. § 636(b)(1); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y.

2008).  When a party timely objects to a magistrate's report and recommendation, a district court

reviews, de novo, "those portions of the report or specified proposed findings or recommendations

to which objection is made." 28 U.S.C. § 636(b)(1).  "To the extent . . . that the party makes only

conclusory or general arguments, or simply reiterates the original arguments, the Court will review

the Report strictly for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ.

6865(LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Ortiz v. Barkley*, 558 F.

Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation

for clear error where objections are merely perfunctory responses, argued in an attempt to engage

the district court in a rehashing of the same arguments set forth in the original petition." (citation

and internal quotation marks omitted)).  "Objections of this sort are frivolous, general and

conclusory and would reduce the magistrate's work to something akin to a meaningless dress

rehearsal." *Vega v. Artuz*, No. 97civ.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30,

2002) (citations and internal quotation marks omitted).  "The purpose of the Federal Magistrates Act

was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every

argument which it presented to the Magistrate Judge." *New York City Dist. Council of Carpenters

Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (internal citation and quotation

marks omitted).

　　　　Finally, "it is established law that a district judge will not consider new arguments raised in

objections to a magistrate judge's report and recommendation that could have been raised before

the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019)

(internal citation and quotation marks omitted); *accord Piligian*, 490 F. Supp. 3d at 716 ("[N]ew

arguments and factual assertions cannot properly be raised for the first time in objections to the

report and recommendation, and indeed may not be deemed objections at all." (quoting *Syed

Mohammad Aftab Kartm, MD, Faans v. New York City Health and Hospitals Corp., et al.*, No. 17 Civ. 6888,

2020 WL 2999228, at \*3 (S.D.N.Y. June 4, 2020))); *Watson v. Geithner*, No. 11 Civ. 9527, 2013 WL 5441748 (S.D.N.Y. Sep. 27, 2013)) ("[A] party waives any arguments *not* presented to the magistrate judge." (emphasis in original)).

### B.    Patent Infringement on a Motion to Dismiss

The Court adopts the R&R's description of the law governing the evaluation of Plaintiff's patent claims on a motion to dismiss.  The R&R's explanation of the background law is accurate, and the parties do not dispute it.  The Court provides a brief addendum to the background law here.

To survive a motion to dismiss, a patent infringement claim must "plausibly allege that the accused product practices each of the limitations found in at least one asserted claim." *Weisner v. Google LLC*, No. 20 CIV. 2862 (AKH), 2021 WL 6424921, at \*1 (S.D.N.Y. Jan. 4, 2021) (internal quotation omitted).  While a plaintiff is "not required to plead infringement on an element-by-element basis," it must nonetheless provide "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021); *see also Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019) ("To plead direct infringement, a plaintiff must allege facts that plausibly indicate that the accused products contain each of the limitations found in the claim.").  "[M]ere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard" governing a court's review of a motion to dismiss. *Bot M8*, 4 F.4th at 1355.

"In deciding a motion to dismiss, the court may consider the complaint, the patent, the intrinsic record, and materials subject to judicial notice." *DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 297–98 (S.D.N.Y. 2022); *accord Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).  Accordingly, "[i]n ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict . . . the claims and the patent specification." *Secured Mail*

*Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly–Clark Corp.*, 570 Fed. App'x. 927, 931 (Fed. Cir. 2014)).  Still, a patent's claims are afforded "their broadest possible construction" at the pleading stage.  *Bill of Lading*, 681 F.3d at 1343 n.13.

Claim construction, though "a matter of law to be determined by the Court," is generally "unsuited for a motion to dismiss" because the processes for claim construction take place later in the case.  *Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 670 (D. Del. 2010).  However, "the Court may dismiss a complaint prior to claim construction when the complaint rests on an implausible claim construction."  *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 979 (N.D. Cal. 2023); *accord Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384, 401 (S.D.N.Y. 2023) (observing that where the plaintiff's allegations do not support a claim for infringement "under any reasonable construction, . . . there is no need for the Court to undertake claim construction." (quoting *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 289–90 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015) (per curiam)).  Moreover, "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  "The purpose of claim construction is to resolve 'disputed meanings and technical scope . . . for use in the determination of infringement.'"  *Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)).  Accordingly, claim construction is not required where the "disputed issue [is] the proper application of a claim term to an accused process rather [than] the scope of the term."  *O2 Micro*, 521 F.3d at 1362 (citing *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001)).  And the Court need only construe claims that are "in controversy, and only to the extent necessary to resolve the controversy."  *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("If the

district court considers one issue to be dispositive, the court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties.").

### III.    DISCUSSION

####   A.    Plaintiff Has Not Plausibly Pleaded the Presence of a "Cursor" in Defendant's Products.

Plaintiff has failed to adequately plead the "cursor" element of Claim 1.  The FAC alleges that the character on the right of Plaintiff's screenshots is a "cursor" as defined in the '211 Patent. FAC Ex. B at 5; Objections at 3.  As discussed, the R&R ultimately found this allegation plausible, because the R&R's observation that the character on the right is not controlled by the client computer was based on extrinsic evidence that could not be judicially noticed at this stage.  R&R at 14.  Despite this, Plaintiff "objects to the R&R's statement that '[a]ny player of Fortnite would be well aware that the character on the right is not a "cursor" corresponding to the movements of the player's mouse," arguing that the R&R's statement does "not tak[e] all reasonable inferences in Plaintiff's favor."  Objections at 10 (quoting R&R at 14).

The Court disagrees with Plaintiff's objection, and concludes that Plaintiff has not plausibly alleged that the character on the right is a "cursor."  "[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8*, 4 F.4th at 1353.  Plaintiff's allegations regarding the "cursor" element do just that.  Plaintiff provides a static screenshot of two characters, a conclusory "cursor" label, and a conclusory statement that the cursor "corresponds to the movement of a hand-held pointing device."  FAC Ex. B at 5.  Plaintiff otherwise "parrot[s] the claim language" in Claim 1 regarding cursors.  *QuickLogic Corporation v. Konda Technologies, Inc.*, 618 F.Supp.3d 873, 884 (N.D. Cal. 2022) (dismissing patent-infringement claim where the allegations "simply restate[d] the claim language alongside bald assertions of infringement"); *see* FAC Ex. B at 5 ("Epic games Fortnite describes receiving a first cursor message at the server from the client

computer, said first cursor message representing a change in a position of a first cursor associated with the client computer in response to user input received from a user of the client computer."). These allegations are "conclusory" and "merely track the claim language." *Bot M8*, 4 F.4th at 1355. They are insufficient to plausibly allege that the avatar on the right is a cursor that responds to user input from the client computer. *Id.* (dismissing patent-infringement claim supported by conclusory allegations and recitations of the claims).

Indeed, notably, Plaintiff provides no allegations that would explain why the avatar on the right, rather than the left, is the one that "corresponds to the movement" of the client computer's "hand-held pointing device." FAC Ex. B at 5; '211 Patent at 51.[9] Even at this early stage in litigation, the Court is not bound to accept Plaintiff's "conclusory allegations . . . masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)), especially where those allegations defy the Court's "experience and common sense," *Iqbal*, 556 U.S. at 664. The Court will not do so here. Plaintiff's bare, conclusory allegations do not suffice to plead the "cursor" element in Claim 1. *See ALD*, 654 F. Supp. 3d at 978 (dismissing patent-infringement claim whose claim constructions were either "implausible" or "inconsistent with infringement").

In so holding, the Court parts ways with the R&R's recommendation that the Court hold that Plaintiff plausibly alleged the "cursor" element. The R&R concluded that Plaintiff's "cursor" allegations are improbable. R&R at 14. But the R&R determined that it could not decide whether Plaintiff's "cursor" allegations were plausibly pleaded without considering extrinsic evidence of

---

[9] As the R&R noted, Plaintiff might not be able to provide factual allegations sufficient to support this claim. R&R at 14 ("Any player of the game *Fortnite* would be well aware that the character on the right is not a 'cursor' corresponding to the movements of the player's mouse."). It may be "conceivable" that a *Fortnite* video-game character standing off-center and facing opposite the display is—to quote Plaintiff—"player 1," Objections at 3, but in the absence of any well-pleaded facts to support that conclusion, it is not "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (dismissing claims where the plaintiffs' allegations did not "nudge[] their claims across the line from conceivable to plausible"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (same). In any event, Plaintiff did not provide any allegations supporting this claim in the FAC.

"*Fortnight*'s characteristics and gameplay," which it could not "judicial[ly] notice" "at the motion to dismiss stage." *Id.*

The Court disagrees. The insufficiency of Plaintiff's "cursor" allegations can be ascertained directly from the face of the pleadings, which, as discussed, provides nothing beyond the type of conclusory allegations and recitations that are insufficient on a motion to dismiss. *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). In the absence of well-pleaded facts that support its claim, the Court is not required to accept Plaintiff's conclusory assertion that the avatar on the right is a "cursor" "correspond[ing] to the movement of a hand-held pointing device" at the client computer. FAC Ex. B at 5.

**B.     Plaintiff Has Not Plausibly Pleaded the Presence of a "Pointer" in Defendant's Products.**

Plaintiff also fails to adequately plead the "pointer" element within Claim 1. As discussed, Claim 1 provides for a "pointer" whose display represents a "change in [] position" of the cursor. '211 Patent at 76. The patent specification provides that "the pointer generally trails the cursor, providing a useful view of a network latency associated with a round trip from . . . the client computer[] to the server and back again to the client computer." *Id.* at 60.

The FAC's "pointer" allegations fail for the same reasons as its cursor allegations. They rely on the same screenshots, which label the avatar on the left as the "pointer." FAC Ex. B. at 5, 7, 9. The screenshots again provide only conclusory allegations in support of the "pointer" label, and otherwise recite the language in Claim 1. *E.g.*, *id.* at 5 (alleging that the "pointer" avatar is a "visual indicator on a display which corresponds to the movement of a hand-held pointing device"); *id.* at 7 ("Epic Games Fortnite describes producing a first pointer message in response to said first cursor message, said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client

computer."); *id.* at 9 ("producing a first pointer message in response to said first cursor message"). These allegations are insufficient to sustain Plaintiff's patent-infringement claim, as they are "conclusory" and "merely track the claim language" in Claim 1. *Bot M8*, 4 F.4th at 1355. This alone warrants dismissal of Plaintiff's claim. *Id.*

Still, there are further reasons why Plaintiff's allegations as to the "pointer" element are insufficient. Here the Court rejoins the R&R. Claim 1 requires the pointer to "represent[] said change in said position of [the] cursor." '211 Patent at 76. The R&R correctly observed that, besides reciting the language in Claim 1,[10] the FAC provides nothing to suggest that the avatar on the left reflects a "change in [] position" of the avatar on the right. R&R at 16; '211 Patent at 76. Indeed, the screenshots show no movement of the avatars at all.[11] R&R at 17 (observing that "[w]ithout any specific allegations, or even a series of two to three photos," there is nothing to suggest that the avatar on the left reflects the change in position of the avatar on the right).

Moreover, "the two avatars are *clearly two different characters* facing different directions." *Id.* at 16 (emphasis added). Plaintiff, strangely, objects to this finding, Objections at 11 ("As can clearly be seen, another version of the same avatar is illustrated."), though Plaintiff elsewhere concedes that the avatars are controlled by different players, *id.* at 3 (arguing that "the avatar on the right is manipulated from player 1" and "the avatar on the left is manipulated from player 2"). The Court observes that, among other things, the two avatars have different haircuts, different builds, different shirts, different pants, different arm-wear, and different belts. FAC Ex. B at 5. In the absence of any other well-pleaded facts, the only conclusion to draw from the screenshot is that it displays two

---

[10] *See* Objections at 11 ("There is subsequently '. . . a change in a position of a first cursor associated with the client computer in response to user input received from a user of the client computer.' As can clearly be seen, another version of the same avatar is illustrated. The generation of the second avatar results in 'producing a first pointer in response to said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client computer.'").

[11] As discussed *supra*, the only difference in Plaintiff's screenshots is the addition of "what appears to be an image of an alien" above the avatar on the left. R&R at 15.

different avatars, neither of which reflects a "change in [] position" of the other. '211 Patent at 76 (Claim 1); *see Iqbal*, 556 U.S. at 679 (in evaluating the pleadings on a motion to dismiss, "the reviewing court [must] draw on its judicial experience and common sense").

Plaintiff's principal objection here ignores these obvious deficiencies. Plaintiff takes great issue with the R&R's use of the term "follows" to describe the required relationship between the cursor and the pointer under Claim 1, because "the word 'follow' is not in the claim.'" Objections at 11; *e.g.*, R&R at 15 ("[T]here is nothing in the Amended Complaint to indicate that the alleged 'pointer' follows the 'cursor.'"). Plaintiff is correct that the word "follow" is not in the '211 Patent, but Plaintiff does not explain why the R&R's choice of words should change the analysis here, other than by gesturing at the standard of review on a motion to dismiss.[12] Claim 1 requires the pointer to "represent[] said change in said position of said first cursor," '211 Patent at 76, which, as discussed, Plaintiff has failed to plausibly to allege.

Moreover, the patent specification uses the word "trails" to describe the relationship between the pointer and cursor, *id.* at 60 ("[W]hen the pointing device is moved, the pointer generally trails the cursor."); *id.* ("For touch screen displays . . . the stylus tip acts as a cursor and the pointer trails the stylus tip."), as did Plaintiff in its briefing before Judge Willis, Opp. at 8 (arguing that "the second avatar, i.e., pointer, is clearly shown *trailing* the first avatar, i.e., the cursor" (emphasis added)).[13] Plaintiff makes no attempt to argue, and the Court declines to hold, that "trail" and "follow" are meaningfully different for the purposes of evaluating Plaintiff's patent-

---

[12] Objections at 11 (arguing that "the R&R narrowly construed the claim terms to require the *pointer* follow or shadow the *cursor*" and thus failed to make "all reasonable inferences . . . in Plaintiff's favor"); *id.* at 12 ("The word follow is not in the claim . . . The R&R [thus] fails to consider the pleadings in a light most favorable to Plaintiff.").

[13] To the extent Plaintiff argues that there is no requirement whatsoever that the pointer and cursor share a relationship akin to "trailing," that argument fails because it was not made before Judge Willis, *Rackley v. Constellis, LLC*, No. 1:22-CV-4066-GHW, 2024 WL 3824108, at *4 (S.D.N.Y. Aug. 14, 2024) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." (quotation omitted)), and because it "contradict[s] . . . the patent specification," *Secured Mail Sols.*, 873 F.3d at 913.

infringement claims.  *See, e.g.*, "Trail" 3c, Merriam-Webster, https://www.merriam-webster.com/dictionary/trail (defining "trail" as "to follow along behind").

For similar reasons, the R&R's use of the word "follow" did not constitute improper "claim construction at the pleading stage."  Objections at 1–2.[14]  Claim construction is not required where, as here, the "disputed issue [is] the proper application of a claim term to an accused process rather than the scope of the term."  *O2 Micro*, 521 F.3d at 1362 (citation omitted).  Though Plaintiff takes issue with the R&R's use of the word "follow," Plaintiff does not dispute the scope of the language within Claim 1 requiring that the pointer "represent[] said change in said position of said first cursor."  Objections at 2.  Nor can it.  Claim 1's language is clear and plainly requires, at a minimum, that the pointer reflect a "change in [] position" of the cursor.[15]  *See Ottah v. Bracewell LLP*, No. 21 CIV. 455 (KPF), 2021 WL 5910065, at *7 (S.D.N.Y. Dec. 10, 2021), *aff'd*, No. 2022-1876, 2022 WL 16754378 (Fed. Cir. Nov. 8, 2022) (granting motion to dismiss patent-infringement claim where "the language of the . . . Patent is clear and plainly does not include" the defendant's product (internal citation and quotation marks omitted)); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").  Word choice notwithstanding, the R&R properly applied the term "change in [] position" within Claim 1 when it

---

[14] Plaintiff's objections also argue that Claim 1's preamble must be construed, because "the preamble is likely limiting as it breathes life into the claimed invention."  Objections at 1.  This argument is waived because it was not raised before Judge Willis.  *Rackley*, 2024 WL 3824108, at *4.  In any event, Plaintiff does not offer, and the Court does not find, any reason why construal of the preamble would mitigate Plaintiff's failures to adequately plead the presence of the "cursor" and "pointer" elements in Claim 1.  *See Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500-GHW, 2019 WL 3423352, at *2 (S.D.N.Y. July 29, 2019) ("[T]he Court need only construe claims that are 'in controversy' and only 'to the extent necessary to resolve the controversy.'" (quoting *Vivid Techs.*, 200 F.3d at 803)).

[15] In any event, Plaintiff waived any dispute regarding the scope of this language by not raising it "in [its] opposition to the motion to dismiss [before Judge Willis]."  *Paulo v. Agence France-Presse*, No. 121CV11209JLRSLC, 2023 WL 2707201, at *7 (S.D.N.Y. Mar. 30, 2023).

found that Plaintiff had not adequately pleaded that the avatar on the left reflects a change in position of the avatar on the right. R&R at 16–17.

Plaintiff's objection to the R&R's inclusion of "network latency" in its description of the '211 Patent, Objections at 5, fails under the same principles. While Plaintiff is correct that the term "network latency" does not appear in the patent claims, the term does appear repeatedly in the patent specification, in exactly the context in which the R&R employed it. '211 Patent at 60, 75; *see also, e.g., id.* at 51 (noting the "latency" that "the user producing the pointing device movement will see" when using the patent). The patent specification provides, and the R&R recites, that the pointer trailing the cursor "provid[es] a useful view of a network latency associated with a round trip from one of the client computers." *Id.* at 60; R&R at 8–9 (quoting patent specification). It was appropriate for the R&R to consider the patent specification in resolving Defendant's motion to dismiss. *Secured Mail Sols.*, 873 F.3d at 912 (granting motion to dismiss patent-infringement claim "based on intrinsic evidence from the specification"); *see also id.* at 913 ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict . . . the patent specification." (quoting *Anderson*, 570 Fed. App'x at 931)).

Indeed, as before, Plaintiff conceded the aptness of network latency to the '211 Patent before Judge Willis, explaining that the "change in position" reflected by the "pointer . . . trailing the . . . cursor" "represents the latency, or lag, experienced between the client and network computers." Opp. at 8. Plaintiff cannot relitigate an argument before the Court that it "previously conceded before [the] Magistrate Judge." *Barnes v. Carolan*, No. 16CIV6044GBDHBP, 2019 WL 3543285, at *3 (S.D.N.Y. Aug. 5, 2019), *aff'd*, 819 F. App'x 51 (2d Cir. 2020); *see also Abu-Nassar v. Elders Futures, Inc.*, No. 88 CIV. 7906 (PKL), 1994 WL 445638, at *5 n.1 (S.D.N.Y. Aug. 17, 1994) (refusing to consider the plaintiff's "new arguments" because doing so "would unduly undermine the authority of the Magistrate Judge").

Accordingly, the Court rejects Plaintiff's objections regarding Judge Willis's descriptions of the "pointer" element. Plaintiff's failure to adequately plead the presence of this element in Defendant's products is an independent reason to grant Defendant's motion to dismiss. *See Ballard*, 268 F.3d at 1358 ("If the district court considers one issue to be dispositive, the court . . . need not exhaustively discuss all the other issues presented by the parties.").

## IV.    LEAVE TO AMEND

The Court grants Plaintiff's request for leave to amend. Objections at 16. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), "it is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal quotation omitted).

Plaintiff has already amended the complaint once, after service of Defendants' first motion to dismiss. However, Plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). The Court cannot hold at this relatively early stage that the pleading deficiencies identified in this opinion cannot be corrected, such that amendment would be futile.[16] *See Pettiford v.*

---

[16] Should Plaintiff choose to amend its complaint, the Court assumes that its counsel will comply with their obligations under Fed. R. Civ. P. 11(b) to first perform a reasonable inquiry into the viability of Plaintiff's claims. *E.g.*, *Amorosa v. Gen. Elec. Co.*, No. 21-CV-3137 (JMF), 2024 WL 552398, at *1 (S.D.N.Y. Feb. 12, 2024) ("Rule 11 imposes an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998))). If counsel signs a complaint stating as a matter of fact that,

*City of Yonkers*, No. 14 CIV. 6271 (JCM), 2021 WL 2556172, at *4 n.4, *5 (S.D.N.Y. June 21, 2021) (in determining futility, "the Court must accept all factual allegations in the proposed amendment as true and draw all reasonable inferences in Plaintiff's favor").

Accordingly, the Court declines to adopt the R&R's recommendation that leave to amend be denied. R&R at 23. Any amended complaint must be filed within twenty-one days from the date of this opinion.

## V.    SANCTIONS

Defendant's request for sanctions under Fed. R. Civ. P. 11, Mem. at 2, 16–18, is denied because it is procedurally improper. Fed R. Civ. P. 11(c)(2) provides, among other things, that "[a] motion for sanctions must be made separately from any other motion." The Court cannot award a motion for sanctions that does not meet this "explicit procedural requirement[]." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002); *accord, e.g., Balderramo v. Go New York Tours Inc.*, 668 F. Supp. 3d 207, 234 (S.D.N.Y. 2023) (declining to issue sanctions for failure to comply with Rule 11(c)(2)); *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 253 (S.D.N.Y. 2018) (same). Because Defendant's motion for sanctions under Rule 11 was "included in [its] memorandum addressing the underlying issues before the district court," it must be denied. *Perpetual Sec.*, 290 F.3d at 142.

Because the Court denies Defendant's Rule 11 motion on procedural grounds, it declines to adopt or otherwise weigh in on the R&R's recommendation that Defendant's motion for sanctions

---

for example, a video-game avatar reflects a "change in [] position" of another avatar with different hair, different clothes, and a different build, *see* FAC Ex. B at 7, 9, he certifies that a reasonable inquiry would show such statement to "have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *see also Zunzurovski v. Fisher*, No. 23CV10881(DLC), 2024 WL 967089, at *1 (S.D.N.Y. Mar. 5, 2024) (observing that where an attorney makes an allegation "when reasonable inquiry would show that it did not exist, he may be held liable for sanctions" (quoting *Gutierrez*, 141 F.3d at 427)).

should be denied on the merits. *See Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 420 (S.D.N.Y. 2003) (deferring resolution of "Rule 11 issues until the end of the litigation").

## VI.    CONCLUSION

For the foregoing reasons, the Court adopts the R&R's recommendation in part.

Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is GRANTED with leave to amend.

Defendant's motion for sanctions under Fed. R. Civ. P. 11(b) is DENIED.

SO ORDERED.

Dated:  September 26, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge