USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/7/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
:
AK MEETING IP, LLC,                                                    :
                                                             Plaintiff,    :          1:23-cv-8214-GHW
:
                -against-                                         :          MEMORANDUM OPINION
:                         & ORDER
EPIC GAMES, INC.,                                                      :
:
                                                           Defendant.    :
:
-----------------------------------------------------------------------X

GREGORY H. WOODS, District Judge:

      Defendant Epic Games, Inc. is the developer of Fortnite, an online video game. In Fortnite Battle Royale, up to 100 players connect their computers to Fortnite's servers and compete live against each other until only the winner remains.

      Plaintiff AK Meeting IP, LLC owns U.S. Patent No. 8,627,211 (the "'211 Patent"). The '211 Patent provides a visualization of a player's "network latency"—that is, the time it takes for a user's inputs on their own computer to be sent to a network's servers and back again. Claim 1 of the '211 Patent recites the display on a user's computer, in addition to the user's own cursor, of a secondary "pointer" that reflects the user's cursor inputs after they make the roundtrip between their computer and the server. The "pointer" generally trails the user's cursor, and the more the pointer trails the cursor, the greater the user's network latency. Both sides agree that at least three essential elements are found in Claim 1: (1) the cursor; (2) the pointer; and (3) the display of the pointer on the user's computer.

      Plaintiff claims that Fortnite Battle Royale infringes Claim 1 of the '211 Patent. Plaintiff's second theory of infringement is now before the Court. The Court dismissed the infringement theory in Plaintiff's prior complaint because it failed to plausibly allege, among other things, that an

in-game avatar facing the user's screen was the user's "cursor" and that a different avatar facing away from the user's screen was a "pointer" reflecting the user's network latency. The Court granted Plaintiff leave to amend its complaint, Plaintiff did so, and Defendant has moved to dismiss Plaintiff's amended complaint for failure to state a claim.

Plaintiff's new theory of infringement alleges that an avatar in Fortnite Battle Royale begins as the user's cursor, but that when the user manipulates their game controller, that avatar ceases to be a cursor and instead becomes a "pointer." This theory contradicts the '211 Patent, which provides for the simultaneous display of the cursor and the pointer on a user's display. It also utterly contradicts Plaintiff's prior theory of infringement, which alleged that the cursor and the pointer were two different avatars. Because Plaintiff's theory of infringement contradicts the '211 Patent, and because there is no indication that further amendment of Plaintiff's complaint would yield a plausible theory of infringement, Plaintiff's infringement claims are again dismissed, this time without further leave to amend.

I.      BACKGROUND[1]

   A. The '211 Patent

Plaintiff AK Meeting IP LLC owns the '211 Patent. Dkt. No. 52 ¶ 6 ("SAC"); Dkt. No. 52-1 ('211 Patent). The '211 Patent is entitled "Method, Apparatus, System, Medium, and Signals for Supporting Pointer Display in a Multiple-Party Communication." '211 Patent at 1. It contains 150 claims, but both parties agree that only Claim 1 is relevant here. SAC ¶ 9; Dkt. No. 59 at 4 ("Memorandum"); Dkt. No. 62 at 4 ("Opposition"); Dkt. No. 63 at 3 ("Reply"). In full, Claim 1

---

[1] The facts are taken from the Second Amended Complaint, Dkt. No. 52, and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Plaintiff's claims allege infringement of the '211 Patent, Dkt. No. 52-1, the Court has also considered the '211 Patent, including its "claims and . . . patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017).

claims:

> A method for supporting multiple-party communications in a computer network including a server and at least one client computer, the method comprising:
>> receiving a first cursor message at the server from the client computer, said first cursor message representing a change in a position of a first cursor associated with the client computer in response to user input received from a user of the client computer;
>> producing a first pointer message in response to said first cursor message, said first pointer message representing said change in said position of said first cursor provided by said first cursor message and being operable to cause display of a pointer on the client computer; and
>> transmitting said first pointer message to said client computer.

'211 Patent, col. 65, ll. 15–29. Both parties agree that at least three claim elements are found within Claim 1: (1) a "cursor associated with the client computer"; (2) a "pointer"; and (3) the "display of [the] pointer on [the] client computer." *Id.*; Memorandum at 5; Opposition at 1.

The '211 Patent specification describes the "cursor" as "the client computer cursor" on the client computer's display, which moves based on "user input signals for moving a cursor" from the client computer's "pointing device." '211 Patent, col. 15, ll. 27–28; *id.*, col. 16, ll. 44–45. Examples of a client computer's pointing device include "a computer mouse" or a "stylus for providing user input on a touch sensitive display." *Id.*, col. 15, ll. 24–26. When a user moves their pointing device, a "cursor message" is created, "represent[ing] a change in a position of the cursor in response to the user input." *Id.*, col. 16, ll. 12–15.

The specification describes the "pointer" as "a secondary pointer, which is also displayed on the . . . client computer[]." *Id.*, col. 16, ll. 46–48. The "cursor" and "pointer" are distinct, and they are both displayed on the user's client computer at the same time. "[U]sers are able to view their own real time cursor and their own and other user's [sic] pointers on their respective displays." *Id.*, col. 16, ll. 36–38.[2]

---

[2] In the case of "handheld client computer[s]," which are operated with a stylus rather than a separate "pointing device," the display of the cursor may be replaced by "the tip of the stylus," "since the tip of the stylus provides a visual indication of the cursor position." '211 Patent, col. 26, ll. 66–67; *id.*, col. 27, ll. 1–2. This case does not involve

3

One of the advantages of the '211 Patent is that it provides a "view of network latency for the user" of a computer that is communicating with a "server through a network such as the internet or an intranet." *Id.*, col. 34, l. 34; *id.*, col. 15, ll. 16–17. As the patent specification explains, "there is a latency that occurs due to the round-trip time required for a cursor message transmitted by . . . the client computer[] . . . to reach the server, to be retransmitted by the server, and to be received back from the server at the client computer[]." *Id.*, col. 16, ll. 20–24. "A feature of the system is that while user input, such as movements of the pointing device at the client computer, . . . are reflected almost immediately on the display as a corresponding change in position of the cursor, the client computer also transmits a cursor message to the server to elicit a pointer message from the server." *Id.*, col. 16, ll. 6–12. Thus, "while the cursor responds to [the client computer's] pointing device movements in near real-time, the pointer only moves once the message representing the movement is received back from the server." *Id.*, col. 34, ll. 20–24. "Accordingly, when the pointing device is moved, the pointer generally trails the cursor, providing a useful view of a network latency associated with a roundtrip from . . . the client computer[] to the server and back again to the client computer." *Id.*, col. 34, ll. 25–29.

An illustrative embodiment of the patent, as provided in the patent specification, is reproduced below. The embodiment is a "screenshot of a user interface displayed on the client computer[]." *Id.*, col. 13, ll. 56–57. The "496" label corresponds to the "cursor" and the "499" label corresponds to the "pointer." *Id.*, col. 26, ll. 58–59.

---

handheld computers operated with a stylus. Plaintiff's claim alleges that the user is "using a pointing device," SAC, Ex. B at 13, "such as a mouse, keyboard, or the like," Opposition at 9, or a "game controller," SAC, Ex. B at 4.

FIG. 11

*Id.* at 15. In this embodiment, when the user moves their pointing device, the "pointer" displayed in black on the user's screen will "generally trail[] the cursor" displayed in white when the cursor is moved. *Id.*, col. 34, ll. 25–26.

### B. The Alleged Infringement

Defendant Epic Games, Inc. is the developer of Fortnite, an online video game. *See* SAC, Ex. B at 3 (the "Claim Chart"). Plaintiff alleges that Fortnite's "Battle Royale" game infringes directly and indirectly on the '211 Patent. SAC ¶ 11; Claim Chart at 4; Opposition at 5.[3]

Plaintiff's infringement allegations are set out in the Claim Chart attached to the Second Amended Complaint. The Claim Chart relies on three images allegedly screenshotted from a video

---

[3] The SAC also alleges that Defendant willfully infringed on the '211 Patent, SAC at 7, but Plaintiff has since withdrawn its willful-infringement claim, Opposition at 13–14.

5

of a game of Battle Royale. Claim Chart at 4. Battle Royale, according to the Claim Chart, is played "live, online." *Id.* Each game consists of up to 100 players who "control an avatar on their own computer" using a pointing device. *Id.* at 9; Opposition at 9. Each player can see the other players' avatars and movements on their own computer. Claim Chart at 9. That is because each player's inputs are sent "to the Fortnite servers," which in turn send the players' inputs to each of the players' computers. *Id.* at 11.

The three screenshots in the Claim Chart were taken chronologically and in very rapid succession. *See* Claim Chart at 4 (alleging that "the video had to be rewound and played back in slow speed to take the images"). They are labelled in chronological order—"Image 1," "Image 2," and "Image 3":



*Id.* The same avatars are in all three images. The avatar on the lower left is allegedly controlled by the computer user, or "Player 1." *Id.* Player 1 controls the left lower avatar using a "game controller"—or to use the language of the '211 Patent, a "pointing device." *Id.*; '211 Patent, col. 15, l. 21. The avatar on the right is not controlled by Player 1. It is "controlled by another player on the server on a separate computer and monitor." Claim Chart at 4.

6

In the timespan covered by the screenshots, Player 1 "us[ed] the pointing device" to "move[] the left lower avatar" slightly to the left. *Id.*  In Image 2, "the lower left avatar's left arm starts to raise" and its "head starts to turn." *Id.* at 13.  In Image 3, "the lower left avatar's left arm is raised even higher," *id.*, and the sword in its hand has moved to the left, *id.* at 16.

The Claim Chart alleges that "[t]he avatar on the lower left is the cursor." *Id.* at 4.  When Player 1 used their pointing device to move the lower left avatar "slightly to the left," a "cursor message[] corresponding to the cursor movement" was sent to, and received by, the Fortnite servers. *Id.* at 12.  Then, according to the Claim Chart, the Fortnite Servers sent "pointer messages" back to the users' computers, including Player 1's computer. *Id.* at 13.  Those "pointer messages" turned what was once a "cursor" avatar into a "pointer" avatar that moved to the left in accordance with the server's pointer message. *Id.* at 13–14.

Thus, under the Claim Chart's description of events, the "cursor" avatar on the lower left in Image 1 has "become a pointer" by Image 3.  *Id.* at 14.  There is a "cursor" but no "pointer" displayed in Image 1, *id.* at 13, and there is a "pointer" but no "cursor" displayed in Images 2 and 3, after the avatar has moved, *id.* at 14.

Plaintiff contends that the Claim Chart adequately alleges that Fortnite Battle Royale infringes on the '211 Patent because it alleges that Battle Royale contains the three elements that both parties agree exist within Claim 1: "a cursor, a pointer, and a display of the pointer on the client computer." Opposition at 1.

### C.  Procedural History

Plaintiff brought this action on September 18, 2023.  Dkt. No. 1.  It filed the First Amended Complaint on January 31, 2024.  Dkt. No. 23 ("FAC").  The FAC relied on similar or identical screenshots to those in the SAC, but alleged a theory of infringement that is totally contradicted by the theory of infringement now before the Court.  Unlike in the SAC, where the lower left avatar is

7

alleged to be both the "cursor" and the "pointer," the FAC alleged that the avatar in the upper right corner was the "cursor" and that the lower left avatar was the "pointer." FAC, Ex. B at 9–11. Plaintiff argued before Judge Willis that the two avatars were actually one character controlled by the user, and that the lower left avatar represented a "change in . . . position of" the upper-right avatar. Dkt. No. 37 at 7. That theory of infringement attempted to capture an important feature of the '211 Patent—that "when the pointing device is moved, the pointer generally trails the cursor"—but failed to plausibly allege, among other things, that the rightmost avatar was the cursor, that the leftmost avatar was the pointer, and that the two avatars both corresponded to the same character in the game. *See generally* Dkt. No. 48 at 13–20.

On August 21, 2024, Judge Willis issued a Report and Recommendation recommending that the FAC be dismissed for failure to state a claim without leave to amend. Dkt. No. 45 at 23. On September 26, 2024, the Court issued an order dismissing the FAC for failure to state a claim, Dkt. No. 48 at 22, but permitting Plaintiff leave to amend because Plaintiff had not yet had the opportunity to amend its complaint with the benefit of a ruling from the Court, *id.* at 20; *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (explaining that "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies").

Plaintiff filed the SAC on October 11, 2024. Dkt. No. 52. Defendant moved to dismiss the SAC on November 25, 2024. Dkt. No. 58 ("Motion"); Dkt. No. 59 (Memorandum). Plaintiff opposed Defendant's motion on December 13, 2024. Dkt. No. 62 (Opposition). Defendant replied on December 23, 2024. Dkt. No. 63 (Reply).

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(6)

Defendant has moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). Motion at 2.

"To survive a motion to dismiss under Rule 12(b)(6)," a patent-infringement claim must satisfy the pleading "standard the Supreme Court articulated in *Iqbal* and *Twombly*." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). "The relevant inquiry under *Iqbal/Twombly* is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.*; *accord, e.g., Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). To determine plausibility, courts follow a "two-pronged approach." *Iqbal*, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Patent Infringement on a Motion to Dismiss

"In order to state a claim for patent infringement," a plaintiff's complaint "must 'plausibly allege that the accused product practices each of the limitations found in at least one asserted claim.'" *Weisner v. Google LLC*, No. 20-cv-2862 (AKH), 2021 WL 6424921, at *1 (S.D.N.Y. Jan. 4, 2021) (quoting *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016)). While a plaintiff is "not required to plead infringement on an element-by-element basis," it must provide "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1352, 1353. "[M]ere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard" governing a court's review of a motion to dismiss. *Id.* at 1355.

9

And "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims." *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024) (quotation omitted).

"In deciding a motion to dismiss, the court may consider the complaint, the patent, the intrinsic record, and materials subject to judicial notice." *DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 297–98 (S.D.N.Y. 2022); *accord Secured Mail Sols.*, 873 F.3d at 912–13 (dismissing patent-infringement claim based on "intrinsic evidence from the specification"). Accordingly, "[i]n ruling on a 12(b)(6) motion, a court need not accept as true allegations that contradict . . . the claims and the patent specification." *Secured Mail Sols.*, 873 F.3d at 913 (Fed. Cir. 2017) (quotation omitted). That said, a patent's claims are afforded "their broadest possible construction" at the pleading stage. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012).

Claim construction, though "a matter of law to be determined by the Court," is generally "unsuited for a motion to dismiss" because the procedures for claim construction take place at a later stage in the case. *Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F. Supp. 2d 665, 670 (D. Del. 2010). Still, "the Court may dismiss a complaint prior to claim construction when the complaint rests on an implausible claim construction." *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 979 (N.D. Cal. 2023); *accord Realtime Tracker, Inc. v. RELX, Inc.*, 659 F. Supp. 3d 384, 401 (S.D.N.Y. 2023) (observing that because the plaintiff's allegations do not support a claim for infringement "under any reasonable construction, . . . there is no need for the Court to undertake claim construction") (quoting *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 289–90 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 956 (Fed. Cir. 2015) (per curiam)). Moreover, "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis omitted). "The purpose of claim construction is to resolve 'disputed meanings and

technical scope . . . for use in the determination of infringement.'" *Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) (quoting *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997)). Claim construction is not required where the "disputed issue [is] the proper application of a claim term to an accused process rather [than] the scope of the term." *O2 Micro*, 521 F.3d at 1362 (citing *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001)). The Court need only construe claims that are "in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *see also Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("As long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes, the court may approach the task in any way that it deems best.").

### III. DISCUSSION

#### A. Plaintiff Has Failed to Plausibly Plead Direct Infringement

Plaintiff's direct-infringement claim fails because Plaintiff's theory of infringement contradicts the '211 Patent's provision for the simultaneous display of a "cursor" and "pointer" on the same screen. *See Bot M8*, 4 F.4th at 1354 (dismissing allegations that were "inconsistent with and contradict[ed] infringement"). The '211 Patent describes a method that generates a "secondary pointer" that is "also displayed" on a user's screen at the same time as "the client computer cursor." '211 Patent, col. 16, ll. 44–48; *see id.*, col. 65, ll. 15–29 (Claim 1) (reciting the "display of a pointer on the client computer" "representing a change in a position of a first cursor associated with the client computer").[4] The SAC, by contrast, alleges that Fortnite Battle Royale only ever displays a pointer

---

[4] Because the SAC fails to plausibly allege the presence of this element of Claim 1, the Court need not address whether it plausibly alleges the presence of the other elements of Claim 1, including the presence of a "cursor" and a "pointer." *See* Memorandum at 4–5; Opposition at 1 (agreeing that Claim 1 requires, at a minimum, a "cursor," a "pointer," and the "display of a pointer on the client computer"). Defendants have offered compelling arguments regarding the sufficiency of the SAC's allegations as to those elements, *see* Memorandum at 9–13, which, if adopted, would each provide an

11

once the user's cursor has disappeared. It alleges that there is a cursor, but no pointer, in Image 1, *see* Claim Chart at 4, and that when Player 1 moves their pointing device, the cursor disappears and "becomes a pointer" in Images 2 and 3, *id.* at 13; *see also id.* at 15 (alleging that after Player 1 moves their pointing device, the lower-left avatar that was once the cursor "is now displayed as a pointer"). These allegations "contradict . . . the claims and the patent specification," and accordingly, they fail to support a plausible claim of infringement. *Secured Mail Sols.*, 873 F.3d at 913; *see Bot M8*, 4 F.4th at 1354; *AlexSam*, 119 F.4th at 35.

The '211 Patent does not provide that the cursor on the client's computer ever disappears and "becomes a pointer." Claim Chart at 13. The patent is very clear that when the server "receiv[es] a first cursor message . . . from the client computer" and "cause[s] display of a pointer on the client computer," the cursor and the pointer are both displayed on the client computer at the same time. '211 Patent, col. 65, ll. 18–29. As the specification explains, "users are able to view their own real time cursor *and their own and other users' pointers* on their respective displays." *Id.*, col. 16, ll. 36–38 (emphasis added). The simultaneous display of the cursor and pointer is necessary to confer an important advantage of the '211 Patent—namely, a view for the user of the "latency that occurs due to the round-trip time required for a cursor message transmitted by one of the client computers . . . to reach the server, to be retransmitted by the server, and to be received back from the server at the client computer[]." *Id.*, col. 16, ll. 20–24. The specification explains that, "[a]dvantageously, display of a cursor and a local pointer permits the client computer user to view the effect of their pointer movements, since while the cursor responds to pointing device movements in near real-time, the pointer only moves once the message representing the movement is received back from the server." *Id.*, col. 34, ll. 18–24. "Accordingly, when the pointing device is moved, the pointer

---

independent basis for the dismissal of Plaintiff's infringement claims. *See Bot M8*, 4 F.4th at 1354 (dismissing infringement claim where allegations were inconsistent with element of patent claim).

generally trails the cursor, providing a useful view of a network latency associated with a round trip from one of the client computers . . . to the server and back again to the client computer." *Id.*, col. 34, ll. 25–29. For the pointer to "trail" the cursor, there must be both a cursor and a pointer on the display. *See id.* at 15 (illustrative embodiment displaying cursor and pointer on same display).

The SAC affirmatively alleges that the alleged cursor and pointer in Defendant's game are not displayed simultaneously on the user's screen. Accordingly, the SAC fails to plausibly allege that Defendant's game practices the limitations in the '211 Patent. "Where, as here, the factual allegations" in the complaint are "inconsistent with and contradict infringement, they are . . . insufficient to state a plausible claim." *Bot M8*, 4 F.4th at 1354 (emphasis omitted). The SAC's allegation that the "cursor" in Defendant's game "becomes a pointer" contradicts the '211 Patent because the '211 Patent provides that the cursor and pointer are displayed separately and simultaneously on the user's computer when the pointing device is moved. *See, e.g.*, '211 Patent, col. 16, ll. 44–48. Because the SAC's entire theory of infringement rests on the cursor "becom[ing] a pointer," its theory of direct infringement is implausible and inadequately pleaded. Claim Chart at 13; *see Bot M8*, 4 F.4th at 1354; *ALD Soc., LLC v. Verkada, Inc.*, 654 F. Supp. 3d 972, 979–80 (N.D. Cal. 2023) (dismissing patent-infringement claim whose claim constructions were either "implausible" or "inconsistent with infringement").

For these reasons, Plaintiff's claim for direct infringement of the '211 Patent is dismissed.

### B. Plaintiff Has Failed to Plausibly Plead Indirect Infringement

Because Plaintiff has failed to plausibly plead direct infringement, he has failed to plausibly plead indirect infringement. "[I]ndirect infringement requires knowledge of [an] underlying direct infringement." *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016). Accordingly, "a claim of indirect infringement can only arise where there is direct infringement." *In re Bill of Lading*, 861 F.3d at 1330. Plaintiff's claim for indirect infringement of the '211 Patent is therefore

13

dismissed.

## IV.     LEAVE TO AMEND

Plaintiff is denied further leave to amend because any further amendment of Plaintiff's infringement claims would be futile. "While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quotation marks and alterations omitted). Plaintiff has now amended its complaint twice, and has already been given the chance to amend its complaint with the benefit of a ruling from the Court. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). Plaintiff's amended theory of infringement is not only still implausible, it utterly contradicts the theory of infringement Plaintiff advanced in its prior complaint. If Plaintiff had a plausible theory of infringement, it "could and should have presented" that theory in one of the three versions of its complaint. *Broidy Capital*, 944 F.3d at 447. The Court therefore declines to grant Plaintiff further leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] futile request to replead should be denied.").[5]

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Complaint is GRANTED without leave to amend. The Clerk of Court is directed to terminate the motion

---

[5] Defendant indicated in its brief that it reserves its right to file a motion for sanctions pursuant to Fed. R. Civ. P. 11 "seeking fees for the preparation of its three motions to dismiss" in this action. Memorandum at 20. "A motion for sanctions [pursuant to Rule 11] must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). If Defendant wishes to move for sanctions, it must do so in a separate motion submitted before Judge Willis. *See* Dkt. No. 16 (referring this case to Judge Willis for general pretrial matters and dispositive motions).

pending at Dkt. No. 58, to enter judgment in favor of Defendant, and to close this case.

    SO ORDERED.

Dated: July 7, 2025  
New York, New York

                               GREGORY H. WOODS  
                            United States District Judge